# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 16-cv-1661-SRN-KMM |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Thomas Jensen, | |
| Respondent. | |

This matter is before the Court on the government's motion to revoke respondent Thomas Jensen's conditional discharge from his placement in the community. After careful consideration, the Court finds that Mr. Jensen's conditional release should be revoked, and he should be recommitted to the care and custody of the Attorney General for the purpose of being remanded to a suitable facility.

### I.  Facts

Mr. Jensen was civilly committed pursuant to 18 U.S.C. § 4246 on May 3, 2017. He was then conditionally discharged pursuant to § 4246(e) on February 6, 2018. Under his conditional discharge order, Mr. Jensen was required to live at Behavior Management Systems ("BMS") in Rapid City, South Dakota. While at BMS, Mr. Jensen was required to abide by a number of conditions, including compliance with all treatment recommendations, all appointments with BMS, and abstention from alcohol and non-prescribed drugs. (ECF No. 35 at ¶¶ 2, 6.)

Mr. Jensen struggled somewhat at BMS, incurring several minor rules infractions. BMS staff indicated that he seemed to lack motivation or ability to change his behavior. (ECF No. 36, Ex. A. at 1.) They asserted that he lacked insight into his illness, continuing to deny having a mental illness and only accepting medication because he was under a court order to do so. (*Id.* at 2.) BMS staff also had concerns about some of his interactions with female staff members. (*Id.* at 1.)

The Court held an evidentiary hearing in this matter at FMC Rochester on November 7, 2019.  The evidence submitted at that time suggested that Mr. Jensen's rules violations at BMS were somewhat less severe than the revocation petition suggested, though still a serious concern.  After finding several Benztropine pills in his dresser drawer during a room inspection, BMS staff suspected Mr. Jensen of "cheeking" these pills.  However, Benztropine is not an antipsychotic, but instead treats the side effects of other antipsychotic medicines.  (Tr. 38, 77.)  And BMS had no evidence that Mr. Jensen was using the medication inappropriately.  Further, there was no evidence that he was otherwise non-compliant with treatment or medication at BMS.  He is also entirely medication-complaint at FMC-Rochester.  (Tr. 80, 96–97.)

BMS staff also cited concerns of inappropriate behavior with female staff members as a reason for his eventual termination.  (ECF No. 36, Ex. A. at 1.)  However, the evidence demonstrated that the concern arose out of only one or two conversations which involved offhand comments from Mr. Jensen that, while rude, were not threatening.  (Tr. 34–37.)  BMS staff had conversations with Mr. Jensen about appropriate and inappropriate conversation and boundaries, and no further instances occurred.  (Tr. 37.)  Although his conduct was inappropriate, it was vastly less serious than the troubling behaviors regarding women that led to his original commitment.  (*Compare id. with United States v. Jensen*, No. 16-cv-1661 (SRN/KMM), 2017 WL 1753291 at *2, 4 (D. Minn. Apr. 25, 2017).)

While at BMS, Mr. Jensen was involved in two isolated but serious incidents involving drugs and alcohol.  The first occurred in November 2018.  Mr. Jensen had a positive test result for THC, after which he admitted to smoking marijuana at the group home.  (ECF No. 36, Ex. A. at 2.)  BMS indicated that they did not terminate Mr. Jensen's services after this incident because "[i]t's [BMS's] belief that when we're working with people with addiction issues that relapses can happen, and we do try to work through that."  (Tr. 17.)  Additionally, his next two urinalyses were negative for marijuana.  (Tr. 42.)

The second incident occurred on February 4, 2019.  Mr. Jensen left the BMS facility late at night and was stopped by staff, because he was not permitted to leave campus unescorted and at that time.  (ECF No. 36, Ex. A. at 2)  He told the staff that he was walking to get cigarettes.  (*Id.*)  The staff believed Mr. Jensen was intoxicated

2

and attempted to give him a breath test for alcohol, which he refused. (*Id.*) The staff was concerned that, given the low temperature and his apparent intoxication, Mr. Jensen could be in danger if he left. (*Id.*) They then called the police, who breathalyzed him. He registered a .198. (*Id.*) Staff searched Mr. Jensen's room and found a bottle of vodka, two energy drinks, and a Gatorade bottle containing a mixture of vodka and another unidentified liquid. (*Id.*). Mr. Jensen was taken to detox by police. BMS terminated Mr. Jensen from their program the next day. (*Id.*)

A bench warrant was issued for Mr. Jensen on February 7, 2019, and he was arrested and eventually returned to FMC Rochester. (*See* ECF No. 40.) The Bureau of Prisons conducted a risk assessment of Mr. Jensen pursuant to 18 U.S.C. § 4246(f) and found that in light of his failure to comply with treatment while conditionally discharged, Mr. Jensen's continued release would create a substantial risk of bodily injury to another person or serious damage to property of another. (ECF No. 45.)

Dr. Gabel testified at the hearing that he was unsure whether Mr. Jensen's release would have been revoked even after the February incident if he had not also been discharged from BMS. (Tr. 107–108.) He also explained that the risk assessment panel was in clear agreement that his release without an appropriate placement would be untenable. (*Id.* at 108–109.)

## II.  Analysis

After careful consideration of all of the facts, the Court determines that the government's motion should be granted, and Mr. Jensen's conditional release should be revoked.

### A.  Standard for Conditional Release Revocation

Under 18 U.S.C. § 4246(f), the Court must consider two factors when determining whether conditional release should be revoked: (1) whether the respondent failed to "comply with the prescribed regimen of medical, psychiatric, or psychological care of treatment," and (2) whether the person's "continued release should create a substantial risk of bodily injury to another person or serious damage to property of another." *Id.* Both elements must be established by a preponderance

3

of the evidence, instead of the clear and convincing standard required at the original civil commitment hearing. *United States v. DiGiulio*, No. 07-4770 (PJS/JSM), 2017 WL 354863 at *11 (D. Minn. Jan. 4, 2017). Against this legal backdrop, it is clear that Mr. Jensen's conditional release must be revoked.

### B. Revocation

The government has clearly demonstrated that Mr. Jensen failed to comply with his prescribed regimen. While at BMS, Mr. Jensen was required to abide by a number of conditions, including compliance with all treatment recommendations, all appointments with BMS, and abstention from alcohol and non-prescribed drugs. (ECF No. 35 at ¶¶ 2, 6.) There is strong evidence to show that Mr. Jensen used alcohol or illicit drugs at least twice while BMS, and he has offered nothing to dispute or disprove this. And indeed, Mr. Jensen is unable to comply with the conditional discharge order, which requires him to reside at BMS in Rapid City, South Dakota, because he was terminated from the program. (ECF No. 35 at ¶ 1.) There is no other placement available for Mr. Jensen at this time. (Transcript, ECF No. 55 at 82.) Thus, the Court concludes that the first prong of the § 4246(f) inquiry is met.

The second prong, whether Mr. Jensen's continued release is dangerous, is more heavily contested by both parties. Mr. Jensen points to many factors in favor of a finding that continued release will not create a substantial risk of injury or damage. For example, there is no evidence that he became violent during either the marijuana or the alcohol incident, though staff described him as "irritable" after being confronted in February regarding alcohol use. And indeed, the Court acknowledges that Mr. Jensen is generally described as "very polite." (Tr. at 25, 32.) He has also attended a variety of therapeutic programs both at BMS and at FMC-Rochester. At BMS, he was involved in group therapy, AA, dialectical behavior therapy, grief counseling, and received medication. (Tr. at 56.) At Rochester, he has a treatment relationship with his psychologist, and attends a variety of group and individual therapies. (*Id.* at 80, 86–88.) He has a cellmate and has had no problems with that individual and interacts with peers throughout the day. (*Id.* at 96.) It is clear to this Court that Mr. Jensen is working hard on improving himself and creating strategies for handling challenging situations in a positive manner, and he should be commended for his progress.

If Mr. Jensen could return to an appropriate supportive setting right away, the Court would likely find that the second prong was not met here. The evidence demonstrates that Mr. Jensen improved significantly in treatment, was compliant with medication, and had only two serious rules violations in a full year of release. This, combined with his excellent conduct at FMC Rochester all demonstrate that if Mr. Jensen had a place to go, the Court could not find that his release posed a danger.

However, critically, there is no place to which Mr. Jensen can be conditionally discharged at this moment. Unconditional release is not a viable option here. As explained in the initial commitment proceedings, if he were released to his home at this time, Mr. Jensen's housing, financial resources, and access to healthcare would be entirely uncertain. (Tr. 109.) This lack of stability, combined with ready access to drugs and alcohol, is an unacceptable risk, particularly where, as here, there is testimony that Mr. Jensen's insight into his own mental illness is poor. (Tr. 81.) Indeed, the panel unanimously agreed that they believed that Mr. Jensen continued to meet commitment criteria, and that an unconditional release would create a substantial risk of danger to people or property. (Tr. 82.) Against this legal and factual backdrop, the Court concludes that revocation is the appropriate step at this time.

### III. Recommendation

For the above reasons, IT IS RECOMMENDED that:

1. The government's Motion for Revocation of Conditional Release (ECF No. 36) be GRANTED.
2. Mr. Jensen be remanded to the custody of the Attorney General for hospitalization at FMC-Rochester.

Date: February 5, 2020         *s/ Katherine Menendez*
                               Katherine Menendez
                               United States Magistrate Judge

# NOTICE

Filing Objections: This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

Under Advisement Date: This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.